Filed 11/7/23  In re E.P. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re E.P. et al., Persons Coming Under the Juvenile Court Law. | B323643; B328498 |
| ——————————————— | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 22CCJP02052A-C |
| Plaintiff and Respondent, | |
| v. | |
| H.P., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner Presiding. Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

A juvenile court ordered three children to be removed from their father. At a review hearing, the court denied the father's request to return them to his custody. The father separately appealed the removal order (case No. B323643) and the denial of his custody request (case No. B328498). On our own motion, we consolidate the appeals for the purpose of decision. We affirm.

Undesignated statutory citations are to the Welfare and Institutions Code.

I

The Los Angeles Department of Children and Family Services (the Department) filed a section 300 petition alleging the father's three children were at substantial risk of serious physical harm and sexual abuse because the father sexually abused an unrelated child in May 2022.

The three children are the father's daughter and his two sons. The daughter was seven and the sons were six and four years old when the Department filed the petition. The children's mother is not a party to this appeal. She and the father broke up in 2020. The mother placed the children in foster care around that time and the children have not seen her since.

The father gained sole legal and physical custody of the children beginning in December 2021. The family lived in a homeless shelter until approximately May 2022, when they moved into a home.

2

The sexual abuse involved a six-year-old girl, N.H., who was a friend of the two older children. One day in May 2022, N.H., her mother, her two sisters, the father, and the father's three children were at the father's new home. N.H.'s mother left to get groceries. When she returned, N.H. was behaving strangely. N.H. also acted differently in the following days. Although N.H. usually liked going to school, she did not want to go.

N.H. later told her mother that the father had kissed her vagina.

Police interviewed N.H., who said the father grabbed her and pulled her into the bathroom. She said the father pulled down her pants and underwear and kissed her vaginal area. N.H. circled that area on an anatomical drawing. N.H. had a bruise on her arm.

Police arrested the father and he was released two days later.

The father denied the allegations. His children said he did not abuse them and they felt safe with him.

On May 27, 2022, the court ordered the children to be detained from the father.

In August 2022, a detective told the Department that the father's case was still under review, but the District Attorney likely would reject it due to insufficient evidence. Although N.H. consistently said the father had sexually abused her, the detective said N.H. had added some "bizarre details" and had a hard time keeping a concrete timeline of what happened. The detective "stated that she believes that something did happen to [N.H.] but at this time, it is hard to discern what occurred due to the various details [N.H.] has provided."

At an adjudication and disposition hearing on September 7, 2022, N.H. testified. She said she was at the father's house and he kissed her "where I go pee."

The court credited N.H.: "I think it was consistent and clear that something bad happened to [N.H.] when she was at the [father's] home where [the father] kissed her in the vagina area."

The court noted that other evidence corroborated N.H.'s testimony. N.H. told her mother and the police that the father had kissed her vagina. N.H.'s strange and different behavior after the incident was also probative. Her bruise was consistent with the father pulling her into the bathroom.

The court sustained allegations about the father's sexual abuse of N.H.

Counsel for the children asked the court to remove the children from the father. The court found by clear and convincing evidence that it was reasonable and necessary to remove the children. It ordered a case plan for the father that included individual counseling to address case issues and sexual abuse counseling for perpetrators.

The children were in nonrelative foster placements and then were placed with their paternal aunt beginning in October 2022.

The father enrolled in individual counseling and sexual offenders group therapy on January 4, 2023. He began individual counseling on January 13, 2023 and as of mid-February, he had attended about three sessions. His therapist said they were still "building rapport."

The father attended four sessions of sexual offenders group therapy, but he did not participate unless prompted and stated he did not belong in the group and had done nothing wrong. The

father told the Department he was not learning anything in this therapy.

The father consistently visited the children.

The father continued to deny wrongdoing and said he was falsely accused.

At a review hearing on March 20, 2023, the court found by a preponderance of the evidence that returning the children to the father's custody would create a substantial risk of detriment to them. It found the father's progress in his case plan was not substantial.

The father appealed the court's September 2022 disposition findings and orders to remove the children and the court's March 2023 review findings and orders to keep the children placed outside the father's custody. He concedes the jurisdictional findings and orders "may have been justified" and he does not contest them.

## II

The court's findings and orders were proper.

To remove children from parental custody, the court must make one of five findings by clear and convincing evidence. (§ 361, subd. (c).) One ground is substantial danger to the children's physical health, safety, protection, or physical or emotional well-being if they return home, and there are no reasonable means to protect them without removing them. (*Ibid.*)

At a review hearing, the juvenile court may keep children out of their parents' custody if the court finds, by a preponderance of the evidence, that returning the children would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. (§ 366.21, subd. (e)(1).) In

5

making this detriment determination, the court must consider parents' efforts or progress, or both, and the extent to which they availed themselves of services. (*Ibid.*)

We follow the substantial evidence standard of review. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) When considering the removal order, we account for the clear and convincing burden of proof. We must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this clear and convincing standard of proof. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1009, 1011.)

Substantial evidence supported the September 2022 removal findings and order. Some risks that carry a low degree of probability can still be substantial because the magnitude of the harm is potentially great. (*In re I.J.* (2013) 56 Cal.4th 766, 778.) Based on the father's sexual assault of N.H., there was substantial danger to the children's physical health and safety if they returned home, and there were no reasonable means to protect them without removal. There was substantial evidence, including N.H.'s testimony, to support the court's belief the sexual abuse allegations were true. Although the conduct with N.H. was a single incident, it was serious and aberrant. (See *id.* at p. 776.)

The father's sexual abuse of N.H. put his children at risk. His children are similarly situated to N.H. in some respects. They are the same age or close in age to N.H. and the father would have opportunities to be alone with them in his home. The children denied sexual abuse from the father, but that does not mean they are not at risk of abuse. The children had been alone in the father's care for just six months when he sexually abused

6

N.H.  The conduct happened within the new family home.  Given the magnitude of the potential harm of sexual abuse, there was substantial evidence of a substantial risk of harm if the children were returned home.

Substantial evidence also supported the court's March 2023 findings and order.  Although the court in September 2022 ordered the father to engage in individual counseling and sexual abuse counseling, the father did not enroll until four months later.  The father had attended only a handful of sessions by the time of the review hearing.  The father said he was not learning anything in sexual abuse counseling.  The court properly found his progress was not substantial.  The concerns that justified removal remained.  Returning the children to the father would create a substantial risk of detriment to their safety and protection.

## DISPOSITION

The orders are affirmed.


                                                    WILEY, J.


We concur:



STRATTON, P. J.




GRIMES, J.